ELIZABETH BUSICK

*v.*

JOHN K. VAN NESS.

1. Where a complainant claims that the defendant holds land subject to a trust in his favor, under an agreement creating an express trust, and the defendant, by his answer, denies that he made the agreement alleged, his denial entitles the defendant to the benefit of the statute of frauds, without pleading it, and precludes the complainant from claiming any benefit under the agreement, as the creation of a trust, unless he can prove the existence of the agreement by that kind of evidence which the statute of frauds requires.

2. But where the defendant uses a parol agreement respecting land to defraud the complainant out of the land, the complainant may prove such agreement for the purpose of showing the fraud.

---

On final hearing on bill and answer and proofs taken in open court.

For the complainant, *Mr. Charles L. Corbin.*

For the defendant, *Mr. Robert L. Lawrence.*

VAN FLEET, V. C.

The complainant charges the defendant with having obtained title to certain real estate, formerly belonging to her, by fraud, and she brings this action to get the title back. The property

·consists of a house and six lots fronting on Fairmount avenue, in Jersey City, worth about $10,000. The house and lots were sold by the sheriff, on the 13th of December, 1883, under a decree regularly entered in this court, condemning them to sale to pay a mortgage given by the complainant thereon, upon which there was due, at the time of the sale, over $3,250. They were also then subject to taxes, assessments and water-rates, amounting in the aggregate to nearly $5,000. The complainant in this suit, immediately after the sheriff's sale, obtained an order to show cause why the sale should not be set aside, and while that order was pending, and on the 23d of December, 1883, the parties made an agreement whereby Mrs. Busick was given until the 19th of January following within which to pay the debt and costs due to the complainant in the foreclosure suit; and it was further agreed that if such payment was made within the time limited, the sale should be set aside, but if it was not made, that then the order to show cause should be discharged, the sale confirmed and the mortgaged premises conveyed in fulfillment of the sale. The time within which the decree might be paid was first extended from the 19th of January to the 23d, and afterwards from the 23d to the 30th. There was no agreement that, if the order to show cause was discharged, the complainant in the foreclosure suit should take title to the mortgaged premises in satisfaction of his decree, but the agreement was, that in that event the sale should be confirmed and the mortgaged premises conveyed in execution of the sale. The purchaser at the sheriff's sale had bid $1,000 for the mortgaged premises, and his agreement with Mrs. Busick gave him a right, in case she did not pay, to a conveyance of the mortgaged premises for that sum. The complainant in this suit applied to the defendant for assistance on the 17th of January, 1884. On the 30th of the same month —that being the day on which the right of redemption under the agreement expired—the defendant paid the complainant in the foreclosure suit the amount due on his decree, and took an assignment of his bid, and on the same day, Mrs. Busick and her husband conveyed the mortgaged premises to the defendant. On the 27th of May following, the defendant procured the

sheriff to convey the mortgaged premises to one James King, and King, on the same day, conveyed them to the defendant.

The complainant says that the arrangement made between the defendant and herself, on the 17th of January, 1884, and under which the defendant acquired title to the mortgaged premises, was this: He was to pay the amount of the decree under which the property had been sold and take title; sell the property during the next three years, and out of the proceeds repay himself, and also pay the taxes and other charges; if a surplus remained, he was to divide it between the complainant and himself, she, in the meantime, and until the property was sold, to retain possession, with the right to rent, and take the rents. The defendant denies that any such arrangement was made; on the contrary, he says that the moment the complainant proposed that she should retain an interest in the property after the title had been made to him, he told her he would have nothing to do with the property on any such terms; and that she then solicited him to take title to the properey and pay the amount due on the decree, and thus relieve her from liability for deficiency; that this he consented to do, and that the only advantage or benefit which, it was understood, the complainant should receive from his taking title, was that the mortgage debt should be paid, and she be thus relieved from all liability for deficiency.

The agreement under which the complainant claims, being a mere oral arrangement, not manifested by a writing signed by the defendant, is utterly void and of no effect, as the creation of a trust in land, under the statute of frauds. The defendant, by denying by his answer that any such agreement was ever made, has put it out of the power of the court to give effect to the agreement, as the creation of a trust in land, unless the agreement is proved by some writing signed by the defendant, for it is authoritatively settled, that where a complainant claims that the defendant holds land subject to a trust in his favor, under an agreement creating an express trust, and the defendant, by his answer, denies that he ever made such an agreement, his denial entitles the defendant to the benefit of the statute of frauds, without pleading it, and precludes the complainant

Busick *v.* Van Ness.

from claiming any benefit under the agreement, as the crea-
tion of a trust, unless he can prove the existence of the agree-
ment by that kind of evidence which the statute requires. *Van
Duyne* v. *Vreeland, 1 Beas. 142; Walker* v. *Hill, 7 C. E. Gr.
513; Wakeman* v. *Dodd, 12 C. E. Gr. 564.* But a complainant
may always prove a parol agreement of this kind for the purpose
of showing fraud, and that is the purpose for which the com-
plainant has attempted to make proof of the parol agreement set
up in this case. The jurisdiction which courts of equity exercise
in such cases, rests, as was said in *Walker* v. *Hill, supra,* on the
ground of fraud and oppression on the part of the purchaser, by
means of which he has obtained the property of the debtor at an
inadequate price, under the assurance of a contract to reconvey
the property to him, or to hold the same subject to future re-
demption.

The case presents a simple question of fact: Did the defendant
obtain title to the complainant's property at an inadequate price,
under a promise that, until the property should be sold, the com-
plainant should retain possession of it, with a right to rent and
take the rents, and that, on its sale, the complainant should be
entitled to the one-half of any surplus of the proceeds of sale
which might remain after the liens thereon were paid? The
burden of proof is on the complainant. Unless she has satis-
factorily proved the fraud, which she has charged against the
defendant, her case fails, and she must be denied relief.

The complainant claims that, at the time the contract in ques-
tion was made, the defendant stood in a confidential relation to
her, he being her legal adviser. The proofs fail to show that
this was the fact. The defendant had, in some previous trans-
actions, given her advice and drawn some papers for her, but he
had no connection with the foreclosure suit pending against her,
nor with the proceeding which she had set on foot to have the
sale of the mortgaged premises set aside. Her interests in that
matter were in the hands of other counsel, and the proofs show
that in that matter, as well as in the particular transaction now
under consideration, she acted under the guidance and direction
of such other counsel. Besides, if the complainant's evidence is

true, she, at the time the contract is alleged to have been made, knew enough about the defendant, from his own confession, as she swears, to have made it impossible for her to have reposed the slightest confidence in either his veracity or his honesty. She says that the defendant, prior to this time, had confessed to her that he had altered her aunt's will, after her aunt's death, by erasing the name of the executor nominated therein, and substituting the name of another person. The proofs, I think, entirely exclude the idea that confidential relations existed between the parties at the time it is alleged the contract was made.

Five persons were present when the complainant alleges the bargain was made, viz.: the complainant, her husband, the defendant, a person by the name of Dyckman Waldron and a Mrs. McCord. The defendant was sick in bed. He had been sick with a fever since the preceding October, and did not recover, so as to be able to go out, until the following March or April. Mrs. McCord was his nurse. She, Mr. Waldron and the defendant all swear, that, while it is true that the complainant asked the defendant to promise to divide with her any profit which he might make on a resale of the mortgaged premises, it is also true that he peremptorily refused to do so, at the same time stating to her that he would have nothing to do with the property on any such terms. They also say, that, after the defendant had thus refused, and as the complainant and her husband were about leaving the defendant's room, Mr. Busick said to the complainant that half a loaf was better than no bread, and that perhaps it would be best for her to let defendant have the property for the encumbrances on it, for, by that course, she would escape a decree for deficiency. They further say, that it was agreed that the defendant should pay the whole amount due on the decree in the foreclosure suit and take title to the mortgaged premises. The complainant and her husband swear, however, to an entirely different state of facts. They say that the contract set up in the bill was made at the same interview which the defendant and his witnesses have described, and the complainant, in corroboration of the truth of the evidence of her husband and herself, produces a written account of what she says then transpired, which she swears

she wrote out on the day that interview occurred, and which, she says, she read the next day to the defendant, in the presence of her husband and Mr. Waldron, and which, she also says, the defendant then acknowledged stated the terms of the contract correctly. But the defendant and Mr. Waldron both swear that no such paper was ever exhibited or read in their presence, nor did they ever hear of it until it was produced, in September, 1885, on a trial between the defendant and one of his tenants. The complainant's evidence respecting the origin of this paper is extremely unsatisfactory. She says she made the memoranda appearing on it, because it was her habit to write out the occurrences of each day. The paper she produces is a sheet of ordinary legal foolscap, such as lawyers use. When asked where she got the paper she used in making her memorandum, she, at first, said that she had torn it out of an old hardware ledger, then that she had taken it out of a blank-book, and afterwards that she had taken it from a collection of foolscap, such as they used for hardware copying. The paper itself shows that it had never constituted a part of a book of any kind.

The complainant also testified that she did not know that she and her husband had made a deed to the defendant for the mortgaged premises. On the 30th of January, 1884, when the defendant paid the decree and took an assignment of the bid under which the complainant in the foreclosure suit had purchased the mortgaged premises, the agent, whom the defendant sent to represent him on that occasion—Mr. Dyckman Waldron—refused to pay the decree until the complainant and her husband conveyed the mortgaged premises to the defendant. When Mr. Waldron announced that he would not pay until the mortgaged premises were conveyed, the complainant's counsel told Mr. Waldron that the complainant had informed him that the defendant had agreed to take title to the mortgaged premises subject to a trust in the complainant's favor. Mr. Waldron replied that his instructions were not to pay unless a conveyance was first made to the defendant, and that he intended to follow his instructions. The complainant was present and heard this conversation, but she did not produce this written memorandum nor

say that she had it, nor pretend that she had read it to the defendant in Mr. Waldron's presence, nor did she claim that Mr. Waldron knew that she had made such a contract with the defendant as that which she now sets up. And yet, it will be observed, that if the complainant's evidence respecting this paper is true, Mr. Waldron knew all about it. In less than two weeks prior to this meeting he had heard the paper read, and had also heard the defendant say that it stated the terms of his contract with the complainant correctly. Her silence, in respect to the paper, at this important juncture, will bear but one interpretation.

The complainant's evidence also stands contradicted, in a material point, by that of her own counsel. As already stated, she says that she did not know that she had made a deed of the mortgaged premises to the defendant. Her counsel swears that when the defendant's agent announced that he would not pay the decree until the complainant had made a conveyance of the mortgaged premises to the defendant, he told the complainant that such a conveyance was no part of the arrangement made by her with the defendant, as she had explained that arrangement to him, and that if she executed the deed she would cut herself off from all right in the mortgaged premises. He says that he also told the complainant that the deed the defendant required her to execute was absolute in its terms, and that he wanted her, if she executed it, to understand what she was doing, so that she could not afterwards say that she had done something which she did not understand. After this statement, and after the deed was read and explained to her, she executed it. The evidence of the complainant's counsel on this point is corroborated by that of two other witnesses. There is other proof in the case strongly impeaching the complainant's evidence. Full credit can neither be given to her evidence, nor to that of her husband.

The fraud alleged is not proved by such a weight of evidence as to entitle the complainant to the relief she asks.

Her bill must be dismissed, with costs.